IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

DAVID QUIGLEY,

Plaintiff,

v.                                                         Civil Action No. 2:17cv70

ROBERT MCCABE, IMHOTEP
CARTER, AND JOHN DOE,

Defendants.

## OPINION & ORDER

This matter is before the Court pursuant to two (2) Motions to Dismiss Plaintiff David

Quigley's ("Plaintiff's" or "Quigley's") Complaint: Defendant Robert McCabe's ("Defendant

McCabe's" or "McCabe's") Motion to Dismiss, Doc. 4, and Defendant Imhotep Carter's

("Defendant Carter's" or "Carter's") Motion to Dismiss Counts II and V of Plaintiff's Complaint

("Partial Motion to Dismiss"), Doc. 15. For the reasons set forth herein, the Court **GRANTS** the

Motion to Dismiss as to Counts I through IV, **WITH LEAVE TO AMEND** as to Counts III and

IV. The Court **GRANTS** the Partial Motion to Dismiss as to Count II. The Court **DENIES**

both Motions as to Count V.

## I.      BACKGROUND

### A.      Factual Allegations[1]

This action arises in response to the alleged negligent medical treatment of Plaintiff

---

[1] "In considering a motion to dismiss, [the Court] accept[s] as true all well-pleaded allegations and view[s] the complaint in the light most favorable to the plaintiff." Venkatraman v. REI Sys., Inc., 417 F.3d 418, 420 (4th Cir. 2005) (citing Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993)). The Court cautions, however, that the facts alleged by Plaintiff are recited here for the limited purpose of deciding the instant Motion to Dismiss. The recited facts are not factual findings upon which the parties may rely for any other issue in this proceeding.

during incarceration. Doc. 1, Ex. A ("Compl.") ¶¶ 6–9. In early August 2013, Quigley was incarcerated at the Norfolk City Jail. Id. ¶ 5. On or about August 7, 2013, he fell from a bunk bed and landed on his head and other parts of his body, falling unconscious and suffering severe injuries that included multiple broken bones. Id. ¶ 6. He was taken to the medical ward of the jail, where Defendant Carter and another doctor were responsible for his medical treatment. Id. ¶ 7. He "begged to be taken to the hospital," but they refused that request as well as any other "reasonable medical care." Id. Defendant Carter once dangled two aspirins in front of Quigley and then pulled them away without providing them to him. Id. Defendants provided "little to nothing in the way of medical services," resulting in "great pain of body and mind," later medical expenses to treat those injuries, and permanent bodily injury. Id. ¶ 8. Upon his release on August 21, 2013, Quigley walked to Sentara Norfolk Hospital to receive care. Id. ¶ 9.

## B.    Procedural History

Plaintiff filed his complaint in the Circuit Court for the City of Norfolk on December 22, 2016. Compl. The Complaint names three Defendants: then Sheriff Robert McCabe, and facility doctors Imhotep Carter and John Doe. Id. at 1–2. The Complaint asserts three claims against all Defendants: Count I for "Breaches of Virginia's Common Law and Statutory Duties," Count II for "Violations of the Virginia Constitution," and Count V for "Breaches of the 8th and 14th Amendments of the United States Constitution pursuant to 42 U.S.C. §§ 1983 and 1988." See id. at 1–4, 6–7. It asserts two additional claims against Defendant McCabe alone: Count III for "Failure to Train" and Count IV for "Defacto [sic] Policy of Denying Inmates Health Care." See id. at 5.

Defendant McCabe removed the case to this Court on January 31, 2017. Doc. 1. On February 1, 2017, he filed the instant Motion to Dismiss, Doc. 4, and an Answer, Doc. 6. Plaintiff filed a Motion to Remand, Doc. 7, which he later withdrew after serving Defendant Carter and receiving notice that Defendant Carter would remove without the defects in Defendant McCabe's removal, see Doc. 19. On February 13, 2013, Plaintiff responded in opposition to Defendant McCabe's Motion to Dismiss. Doc. 10. On February 16, 2017, Defendant McCabe replied in further support of the Motion to Dismiss. Doc. 12.

On March 1, 2017, Defendant Carter filed the instant Partial Motion to Dismiss, Doc. 15, and an Answer, Doc. 17. On March 13, 2017, Plaintiff responded in opposition of the Partial Motion to Dismiss. Doc. 20. On March 20, 2017, Defendant Carter replied in further support of the Partial Motion to Dismiss. Doc. 21.

## II.    LEGAL STANDARDS

### A.    Rule 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint; it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Venkatraman, 417 F.3d at 420 ("In considering a motion to dismiss, we accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff.") (citing Mylan Labs., 7 F.3d at 1134). A complaint establishes facial plausibility "once the factual content of a complaint allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 256 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 678). Therefore, the complaint need not include "detailed factual allegations" as long as it pleads "sufficient facts to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of misconduct." Id. Although a court must accept as true all well-pleaded factual allegations, the same is not true for legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

In deciding the motion, a court may consider the facts alleged on the face of the complaint as well as "'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint.'" Moore v. Flagstar Bank, 6 F. Supp. 2d 496, 500 (E.D. Va. 1997) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (1990)). The court may look to documents attached to the complaint and those incorporated by reference without converting a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment. See Pueschel v. United States, 369 F.3d 345, 353 n.3 (4th Cir. 2004) (citations omitted).

## B.    Eleventh Amendment Immunity

The Fourth Circuit has yet to decide whether courts should address Eleventh Amendment immunity under Rule 12(b)(1) or 12(b)(6). See Andrews v. Daw, 201 F.3d 521, 525 n.2 (4th Cir. 2000) (declining to decide). The trend in this District and other districts within this Circuit is toward considering Eleventh Amendment immunity under Rule 12(b)(1). See Parks v. Commonwealth of Virginia Dep't of Soc. Servs. Child Support Enf't Servs., No. 116cv568, 2016 WL 4384343, at *2 (E.D. Va. Aug. 17, 2016) (citations omitted). Nevertheless, the distinction makes little practical difference when a defendant challenges the abrogation of Eleventh

Amendment immunity grounds due to insufficiency of the pled facts rather than inaccuracy. See

Zemedagegehu v. Arthur, No. 1:15cv57, 2015 WL 1930539, at *3 (E.D. Va. Apr. 28, 2015). In

that situation, the analysis is the same under either rule: the Court accepts the pled allegations as

true and construes them in a light most favorable to the plaintiff. See id.

## C.     § 1983

Section 1983 holds liable for damages any "person" who deprives someone of

Constitutional rights while acting under color of state law. States and state officials who are

sued in their official capacity are not "persons" subject to liability under § 1983. Will v.

Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). However, state officials sued in their

personal capacity are "persons" subject to liability, even if sued for actions of an official nature.

Hafer v. Melo, 502 U.S. 21, 31 (1991). In some circumstances, supervisors may be held liable

for constitutional injuries inflicted by their subordinates. Shaw v. Stroud, 13 F.3d 791, 798 (4th

Cir. 1994) (citations omitted). Supervisory liability is intended to "pinpoint[] the persons in the

decisionmaking chain whose deliberate indifference permitted the constitutional abuses to

continue unchecked." Id. (quoting Slakan v. Porter, 737 F.2d 368, 376 (4th Cir. 1984)) (internal

quotation marks omitted). The Fourth Circuit requires three elements to establish supervisory

liability:

> (1) that the supervisor had actual or constructive knowledge that his subordinate
> was engaged in conduct that posed "a pervasive and unreasonable risk" of
> constitutional injury to citizens like the plaintiff;
> (2) that the supervisor's response to that knowledge was so inadequate as to show
> "deliberate indifference to or tacit authorization of the alleged offensive
> practices;" and
> (3) that there was an "affirmative causal link" between the supervisor's inaction
> and the particular constitutional injury suffered by the plaintiff.

Id. at 799 (citations omitted). Demonstrating "a pervasive and unreasonable risk" requires

evidence that the conduct is widespread or at least occurred on several occasions. Id.

5

To prevail on a § 1983 claim, a plaintiff "must show that (1) [he was] deprived of a federal statutory or constitutional right; and (2) the deprivation was committed under color of state law." Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003). Additionally, a plaintiff may allege a "policy or custom" violation in four ways:

(1) through an express policy, such as a written ordinance or regulation;
(2) through the decisions of a person with final policymaking authority;
(3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens;" or
(4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

Id. (quoting Carter v. Morris, 164 F.3d 215, 217 (4th Cir. 1999)).

## III.   ANALYSIS

### A.    Defendant McCabe's Motion to Dismiss

#### i.    Count I: Medical Negligence

The dispute in Count I is whether Defendant McCabe is vicariously liable for the acts of a third party health care contractor that he hires to offer health care at the jail. McCabe offers three arguments that he is not liable. See Doc. 5. First, the Virginia Medical Malpractice Act, Va. Code. Ann §§ 8.01-581.1 et seq., defines the health care providers subject to duty under that act, and McCabe contends that he does not fit those definitions. Doc. 5 at 3. Second, McCabe only has the duty to ensure the provision of medical care, not the duty to render care and treatment. Id. at 3–4 (citing Va. Code Ann. § 53.1-126). Third, Virginia law does not have any provision for vicarious liability for the negligence of a health care provider by any supervisor. Id. at 4 (citing Peck v. Tegtmeyer, 834 F. Supp. 903 (W.D. Va. 1992) and Jenkins v. Woody, No. 3:15cv355, 2015 WL 8665457 (E.D. Va. Dec. 11, 2015)).

Plaintiff contends that Count I states a proper cause of action. Doc. 10 at 3–11. Plaintiff claims that "Virginia Courts have long recognized that a sheriff owes a common law duty to

prisoners under his care." Doc. 10 at 3 (citing Dabney v. Taliaferro, 25 Va. 256 (1826)).

Plaintiff cites Virginia Code § 53.1-126, which states, in pertinent part, that "medical treatment

shall not be withheld for any communicable diseases, serious medical needs, or life threatening

conditions." Additionally, Plaintiff takes issue with McCabe's reliance on Peck. Id. at 8. While

the Peck court states, in reference to the Virginia Medical Malpractice Act, that "[t]he act

contains no provision for vicarious liability and the breadth of the statutory scheme suggest that

none is intended," 834 F. Supp. at 907, Plaintiff argues that this quote "needs to be viewed

within the context of the Peck case which dealt with the 'captain of the ship doctrine.'" Doc. 10

at 8.

Plaintiff contends that McCabe cannot contract out of his liability. Id. at 8–10 (citing

Love v. Schmidt, 329 Va. 357 (1990) and Covington v. Westchester County Jail, No. 96 Civ.

7551, 1998 WL 26190 (S.D.N.Y. Jan. 26, 1998)). In Love, the defendant contracted with an

individual to manage defendant's office building. 329 Va. at 358. The individual failed to

maintain a toilet seat which caused injury to the plaintiff. Id. at 359. The Supreme Court held

that

> this case involves an attempt to delegate the landlord's common-law duty to
> maintain his premises in a reasonably safe condition. Because such duty cannot
> be delegated, we are of the opinion that notice to Slater of the unsafe condition of
> the toilet seat was notice to [defendant], based on agency principles and the
> doctrine of respondeat superior.

329 Va. at 361. In Covington, the court held that a "municipality's duty to provide medical care

to inmates is non-delegable and is not absolved by contracting with a third-party to provide

care." 1998 WL 26190, at *4. Finally, in West v. Atkins, 487 U.S. 42, 56 (1988), the Supreme

Court held that "Contracting out prison medical care does not relieve the State of its

constitutional duty to provide adequate medical treatment to those in its custody, and it does not

deprive the State's prisoners of the means to vindicate their Eighth Amendment rights." As such, Plaintiff argues that McCabe's "duties to provide health care to inmates with serious medical conditions are based on common law and statutory duties and those duties cannot be delegated." Doc. 10 at 11.

Plaintiff fails to state a proper cause of action in Count I. Count I alleges a medical negligence claim under Virginia law. McCabe, however, is not a healthcare provider under the Virginia Medical Malpractice Act, Va. Code. Ann § 8.01-581.1, and the Act does not contain a provision for vicarious liability. See Peck, 834 F. Supp. at 907. Additionally, while a sheriff has a duty to make medical care available, he does not have the duty to render it. See Va. Code. Ann § 53.1-126; Quigley v. McCabe, 91 Va. Cir. 397, at *2 (Norfolk 2015) ("The sheriff and the jailor cannot diagnose, treat, and attempt to cure broken bones and a brain injury; the physician does that.").

Further, Plaintiff's reliance on West and Jenkins is misplaced. West and Jenkins were brought under § 1983 and concern a sheriff's constitutional duty to ensure adequate medical care. As McCabe notes, "Sheriff McCabe does not assert that his right under Virginia law to hire an independent contractor to provide medical care obviates either his statutory duty under Virginia law or his constitutional duty under the Eighth Amendment to make medical care available." Doc. 12 at 1–2. Instead, "in moving to dismiss Count I, Sheriff McCabe asserts that a medical negligence action against him directly or vicariously, is not a cognizable claim." Id. at 2.

Finally, Plaintiff's interpretation of Dabney is incorrect. Prior to Defendants' removal of this action, the Norfolk Circuit Court analyzed Plaintiff's medical negligence claim upon McCabe's demurrer, prior to a voluntary non-suit. Quigley, 91 Va. Cir. 397, at *2. In reviewing

Dabney, the Norfolk Circuit Court noted that the "sheriff and the jailor have a duty to make medical care available to the prisoner; the physician has the duty to render it." Id. Additionally, a "physician has a duty to use the degree of skill and diligence in the care and treatment of his patient that a reasonably prudent physician in his field of practice would have used in the circumstances. . . . A sheriff can have no such duty." Id. (citing Va. Code § 8.01-581.20; Reed v. Church, 175 Va. 284 (1940)).

Count I states a claim for medical negligence, yet McCabe is not a healthcare provider under the Virginia Medical Malpractice Act, the Act does not contain a provision for vicarious liability, and Plaintiff has failed to allege that McCabe breached his duty to make medical care available. Thus, Count I fails to state a proper cause of action, and the Court **GRANTS** Defendant McCabe's Motion to Dismiss as to Count I of the Complaint.

ii.     *Count II: Virginia Constitution*

In Count II, Plaintiff pleads violations of Article I, §§ 9 and 11 of the Virginia Constitution. Compl. ¶ 20. McCabe argues that neither provision includes a private right of action because they are not self-executing. Doc. 5 at 5–7. In Robb v. Shockoe Slip Foundation, 228 Va. 678 (1985), the Virginia Supreme Court stated:

> A constitutional provision is self-executing when it expressly so declares . . . . Even without the benefit of such a declaration, constitutional provisions in bills of rights and those merely declaratory of common law are usually considered self-executing. The same is true of provisions, which specifically prohibit particular conduct. Provisions of a Constitution of a negative character are generally, if not universally, construed to be self-executing.

Id. at 681–82. Additionally, a "constitutional provision may be said to be self-executing if it supplies a sufficient rule by means of which the right given may be employed and protected, or the duty imposed may be enforced." Id. at 682. In contrast, a constitutional provision "is not

self-executing when it merely indicates principles, without laying down rules by means of which those principles may be given the force of law." Id.

McCabe argues that Plaintiff "cannot rely on Art. I, §§ 9 or 11 of the Virginia Constitution to establish a private cause of action, as neither provision is self-executing." Doc. 5 at 6. McCabe asserts that "[a]lthough § 9 is part of Virginia's Bill of Rights, it states only the principle that cruel and unusual punishment ought not to be inflicted, without any attendant rules." Id. at 7. As such, McCabe contends that § 9 is not self-executing. Id. Additionally, McCabe claims that "Virginia courts have consistently held that only the provisions of § 11 that govern 'the taking or damaging of private property for public use have been held to be 'self-executing.'" Id. at 6 (quoting Young v. City of Norfolk, 62 Va. Cir. 307 (Norfolk 2003) and citing Chandler v. Routin, 63 Va. Cir. 139, (Norfolk 2003); Gray v. Rhodes, 55 Va. Cir. 362 (Charlottesville 2001)). Moreover, in Doe v. Rector & Visitors of George Mason University, this Court noted that § 11 is self-executing, but "this has only been held to be true with regard to property deprivation." 132 F. Supp. 3d 712, 728 (E.D. Va. 2015) (emphasis in original).

Plaintiff argues that Count II states a proper cause of action based on the Virginia Constitution. Doc. 10 at 11. Plaintiff notes that constitutional provisions "in bills of rights and those merely declaratory of the common law are usually considered self-executing." Id. (citing Gray v. State Sec'y of Transp., 276 Va. 93 (2008)). Plaintiff cites Ogunde v. Prison Health Services, Inc., et al., 274 Va. 55 (2007) in support of his claim under § 9. Doc. 10 at 12. Plaintiff states that in Ogunde "an inmate sued for, among other things, a denial of medical treatment. The Supreme Court in that case upheld Ogunde's right to pursue a claim under Article 1, § 9 of the Virginia State Constitution." Id. Plaintiff argues that the Virginia Circuit Court cases cited by McCabe are unpersuasive as they "all were decided prior to Ogunde" and

the cases McCabe cites from this District are not applicable to the case at bar as neither involved § 9 of the Virginia Constitution. Id. at 13–14.

Plaintiff's reliance on Ogunde is misplaced. The court in Ogunde "only held that it was error if the circuit court dismissed a claim under § 9 of the Declaration of Rights sua sponte because of the plaintiff's failure to comply with the Virginia Prisoner Litigation Reform Act, [Va.] Code § 8.01-689 et seq." by not attaching supporting documentation to his pleading. Quigley, 91 Va. Cir. 397, at *2 (citing 274 Va. at 65). The court did not address whether § 9 was self-executing. Because § 9 states only the principle that cruel and unusual punishment ought not to be inflicted, without any attendant rules, § 9 is not self-executing, and Plaintiff's § 9 claim is improper.

Additionally, Plaintiff argues Count II states a proper claim based on § 11 of the Virginia Constitution. Id. at 11–12. Plaintiff cites Burns v. Board of Supervisors, 218 Va. 625 (1977) and Gray, 276 Va. at 93, for support of this proposition. Id. Both Burns and Gray involved plaintiffs asserting a private right of action for claims of damage to or taking of property. As this Court noted in Doe, 132 F. Supp. 3d at 728, § 11 of the Virginia Constitution has been found to be self-executing only in the context of claims of damages to or takings of property. As Plaintiff's claim does not fall into one of those categories, it is improper.

For the reasons listed above, Count II fails to state a proper cause of action under Article I, §§ 9 and 11 of the Virginia Constitution. Therefore, the Court **GRANTS** Defendant McCabe's Motion to Dismiss as to Count II of the Complaint.

*iii.    Count III: Failure to Train and Count IV: De Facto Policy of Denying Inmates Health Care*

11

McCabe argues that there is no common law duty in Virginia or provision in the Virginia Constitution that supports either Count III or IV. Doc. 5 at 7–8. Plaintiff responds by citing multiple federal cases concerning actions pursuant to § 1983 that recognize such duties. Doc. 10 at 15–17. It appears that Plaintiff merely improperly alleged these as Virginia law claims rather than Federal claims. Thus, the Court **DISMISSES** Counts III and IV **WITH LEAVE TO AMEND** because of the apparent pleading error.

      *iv.    Count V: § 1983 Claim for Deliberate Indifference in violation of the Eighth and*

*Fourteenth Amendments*

In Count V, Plaintiff asserts a § 1983 claim alleging that Defendants' actions and inactions show "deliberate indifference to [P]laintiff's serious medical needs." Compl. ¶ 29. McCabe moves to dismiss Count V on the basis that it is barred by the Eleventh Amendment and that Count V fails to state a claim upon which relief may be granted. Doc. 5 at 8–12.

**a.    Eleventh Amendment Immunity**

"The Eleventh Amendment limits the Article III jurisdiction of the federal courts to hear cases against States and state officers acting in their official capacities." Kitchen v. Upshaw, 286 F.3d 179, 183–84 (4th Cir. 2002). Additionally, "federal district courts applying Virginia law have repeatedly held that Virginia Sheriffs, and their deputies, are 'state officers' for the purpose of the Eleventh Amendment." Vollette v. Watson, 937 F. Supp. 2d 706, 714–15 (E.D. Va. 2013); see Bland v. Roberts, 857 F. Supp. 2d 599, 610 (E.D. Va. 2012).

The Fourth Circuit instructs that "when a plaintiff does not allege capacity specifically, the court must examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity." Biggs v. Meadows, 66 F.3d 56, 61 (4th Cir. 1995). In determining whether a complaint is brought in the

defendant's individual capacity, a court should consider the following factors: (1) "the plaintiff's failure to allege that the defendant acted in accordance with a governmental policy or custom, or the lack of indicia of such a policy or custom on the face of the complaint;" (2) "a plaintiff's request for compensatory or punitive damages, since such relief is unavailable in official capacity suits;" and (3) "[t]he nature of any defense raised in response to the complaint," for example, a qualified immunity defense available only in a personal capacity suit. Id. (citations omitted). During this determination, "the underlying inquiry remains whether the plaintiff's intention to hold a defendant personally liable can be ascertained fairly." Id.

McCabe argues that Plaintiff "intended to sue Sheriff McCabe in his official capacity." Doc. 5 at 10. McCabe notes that Plaintiff "clearly alleges that Sheriff McCabe acted in accordance with a policy and the face of the [C]omplaint contains the relevant indicia." Id. at 9. Counts III and IV of the Complaint contain allegations of McCabe's "failure to train and a de facto policy, both pertaining to a custom of discouraging staff from sending inmates to the hospital." Id. McCabe argues that Count V, too, "appears directed at Sheriff McCabe's purported policy," by alleging Defendants' failure "to provide [Plaintiff] with proper medical attention or refer him to a facility where he could receive proper medical attention." Id. (quoting Compl. ¶27). McCabe acknowledges that Plaintiff seeks compensatory and punitive damages, which are available only in individual capacity suits. Id. at 10. Finally, McCabe admits that he asserts a qualified immunity defense, but only in the event Plaintiff's § 1983 claim is determined to be an individual capacity claim. Id. Based on these factors, McCabe argues that Plaintiff intended to sue Sheriff McCabe in his official capacity, and thus that the Eleventh Amendment bars Plaintiff's federal claim for money damages. Id.

In his opposition to the Motion to Dismiss, Plaintiff fails to address in what capacity the Complaint seeks to hold McCabe liable. Despite this failure on Plaintiff's part, Plaintiff's intent to hold Defendant McCabe personally liable "can be ascertained fairly" once the Biggs factors are applied to the Complaint. Biggs, 66 F.3d at 61. McCabe correctly notes that the Complaint alleges a "de facto policy [and] custom of discouraging staff from sending inmates to the hospital." Doc. 5, at 9. However, the Biggs court singled out "governmental" or "official" policies and customs, of a type "that would shield [a defendant] from individual culpability." Biggs, 66 F.3d at 61. In the present case, Plaintiff alleges that Defendant McCabe himself is the source of the challenged policy and custom. See Compl. ¶ 22 ("Sheriff McCabe took measures to drastically cut costs and discouraged the taking of inmates to the hospital."); id. ¶24 ("Sheriff McCabe had a de facto policy which discouraged his staff to take inmates who were in the plaintiff's condition to the hospital."). Indeed, McCabe himself characterizes Plaintiff's allegations as "directed at Sheriff McCabe's purported policy." Doc. 5 at 9 (emphasis added). Thus, on its face, the Complaint does not challenge a governmental or official policy that Defendant McCabe was obliged to follow by virtue of his office, but rather a policy allegedly established by McCabe himself. The second Biggs factor weighs in favor of Plaintiff, as the Complaint seeks compensatory and punitive damages. Finally, as in Biggs, the third factor is largely a wash, given that Defendant McCabe asserted both a qualified immunity defense (suggesting he perceived the suit to be in his individual capacity) and an Eleventh Amendment immunity defense (suggesting he perceived the suit to be in his official capacity).

Thus, upon review of the allegations in the Complaint and application of the Biggs factors to those allegations, the Court FINDS that Plaintiff intended to sue McCabe in his individual capacity. Accordingly, the Court DENIES the Motion to Dismiss as to Count V.

**b. Adequacy of Claim**

McCabe argues that Count V "fails to state a claim upon which relief may be granted." Doc. 5 at 11. McCabe claims that "[if] for argument's sake the Court determines that [P]laintiff has alleged an individual capacity claim under § 1983 against Sheriff McCabe, the absence of factual allegations regarding the Sheriff's personal involvement in the provision of medical care is fatal to such a claim." Id. (citing Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977)).

"[A] plaintiff's § 1983 action against a particular defendant must be dismissed if the plaintiff's reason for naming the defendant is based solely upon the theory of respondeat superior." Id. (quoting Harris v. City of Virginia Beach, 11 Fed.Appx. 212, 215 (4th Cir. 2001) (citing Vinnedge, 550 F.2d at 928)). As such, McCabe argues that Plaintiff "must affirmatively demonstrate that the Sheriff 'acted personally in the deprivation of the [P]laintiff's rights'" to establish an individual capacity claim against McCabe. Id. (quoting Vinnedge, 550 F.2d at 928). McCabe argues that Plaintiff "fails to allege Sheriff McCabe's direct involvement with his medical care." Id. Instead, Plaintiff "alleges that the defendant doctors saw him several times, knew he sustained injuries from the fall, and refused to provide medical care or to send him to the hospital. His allegations are limited to the medical defendants' conduct; nowhere does [P]laintiff allege that Sheriff McCabe personally denied him medical care." Id. Additionally, McCabe claims that Count V is "silent with regard to any [unconstitutional policy or custom] claim. Moreover, [P]laintiff's Complaint lacks any factual allegations regarding Sheriff McCabe's deputies or with regard to a practice that was 'so persistent and widespread' and 'so permanent and well settled to constitute a 'custom or usage' with the force of law." Doc. 12 at 5 (quoting Carter, 164 F.3d at 218). As such, McCabe argues, Count V should be dismissed.

15

Plaintiff claims that Count V asserts a valid cause of action. Doc. 10 at 14. Plaintiff notes that "[i]t has long been held that a sheriff may be liable for violations of an inmate's constitutional rights where he has failed to train his staff and for having a policy or custom where inmates are denied medical care." Id. at 15. Plaintiff cites a number of cases bringing § 1983 claims on the basis of alleged municipal policies or supervisory liability claims. Id. at 15–17. Plaintiff notes that a sheriff can be held liable for a violation of an inmate's constitutional rights if there is a deprivation of those rights through an official policy or custom, id. at 16 (citing Francis v. Woody, No. 3:09cv235, 2009 WL 1442015 (E.D. Va. May 22, 2009)), and that "supervisory liability exists if the official implements a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force behind the constitutional violation." Doc. 10 at 16 (quoting Marcotte v. Monroe Corrections Complex, 394 F. Supp. 2d 1289, 1297 (W.D. Washington 2005)). Further, Plaintiff asserts that "a sheriff may be held liable for a violation of an inmate's constitutional rights where he has actual or constructive knowledge that his subordinates are engaged in unreasonable conduct." Id. (citing Bell v. City of Roanoke Sheriff's Office, No. 7:09cv214, 2009 WL 5083459 (W.D. Va. Dec. 23, 2009)).

Count V states a proper cause of action as the Complaint contains sufficient allegations that McCabe "had some policy to deny medical care." Martin v. Chesapeake Circuit Court, No. 2:96cv48, 1997 U.S. Dist. LEXIS 12274, at *7 (E.D. Va. June 19, 1997). In Martin, the plaintiff alleged that a sheriff was deliberately indifferent to the plaintiff's medical needs and was denied certain medical care. Id. at *6. The Court dismissed the plaintiff's supervisory liability claim against the sheriff, noting that the plaintiff "must allege either that [the sheriff] was personally involved in a wrongful act or that an alleged wrongful act occurred pursuant to some official policy or custom for which [the sheriff] was responsible." Id. at *7. Plaintiff does not allege that

McCabe personally denied him access to medical care. However, Plaintiff states in his Complaint that the alleged wrongful acts of Defendants Carter and Doe occurred pursuant to Sheriff McCabe's "de facto policy" discouraging staff from taking inmates to the hospital in order to cut costs. Compl. ¶¶ 22–25. Plaintiff alleges that he "was seen several times" by Defendants Carter and Doe, and that "[o]n these occasions it was apparent to Dr. Carter and Dr. Doe that the plaintiff had serious medical needs and suffered from life threatening conditions." Id. ¶ 7. Plaintiff alleges that although he "was rendered unconscious, suffered a brain injury, had blurred vision, suffered a broken collar bone, a broken wrist, and weakness in his legs," and had "begged to be taken to the hospital," Defendants Carter and Doe "refused to provide the plaintiff with any reasonable medical care." Id. ¶¶ 6–7. These alleged facts are sufficient to establish "an 'official policy or custom' of deliberate indifference toward the medical needs of inmates and detainees." Newbrough v. Piedmont Regional Jail Authority, 822 F. Supp. 2d 558, 582 (E.D. Va. 2011); cf. id. at 582–84 (holding that plaintiff sufficiently stated policy-or-custom claim by alleging multiple incidents involving multiple medical personnel refusing to provide reasonable care). As such, the Court **DENIES** Defendant McCabe's Motion to Dismiss as to Count V.

**B.      Defendant Carter's Partial Motion to Dismiss**

### i.      *Count II: Virginia Constitution*

Carter raises the same arguments under Count II that McCabe raises: that Art. I, §§ 9 and 11 of the Virginia Constitution are not self-executing. Doc. 16 at 3–5. The same analysis applies to the same argument under both Motions. Thus, the Court **GRANTS** the Partial Motion to Dismiss as to Count II because those constitutional provisions are not self-executing.

### ii.      *Count V: § 1983 Claim for Deliberate Indifference in violation of the Eighth and Fourteenth Amendments*

Carter's sole argument on this Count is that the statute of limitations has expired. Doc. 16 at 5–7. Because § 1983 does not contain its own statute of limitations, the state statute of limitations applies. Wilkins v. Montgomery, 751 F.3d 214, 223 (4th Cir. 2014) (citations omitted). In Virginia, the applicable limit is two (2) years. See id.

There is no dispute that Plaintiff filed the instant Complaint more than two (2) years after his claim accrued, and this argument entirely concerns tolling. Specifically, the issue here is whether his prior state complaint that he nonsuited tolls the statute of limitations for his § 1983 claim that was not included in that nonsuited complaint. See Doc. 16 at 5–7; Doc. 20 at 12–13. The tolling provision for nonsuited complaints provides:

> If a plaintiff suffers a voluntary nonsuit as prescribed in § 8.01-380, the statute of limitations with respect to such action shall be tolled by the commencement of the nonsuited action, regardless of whether the statute of limitations is statutory or contractual, and the plaintiff may recommence his action within six months from the date of the order entered by the court, or within the original period of limitation, or within the limitation period as provided by subdivision B 1, whichever period is longer. This tolling provision shall apply irrespective of whether the action is originally filed in a federal or a state court and recommenced in any other court, and shall apply to all actions irrespective of whether they arise under common law or statute.

Va. Code Ann. § 8.01-229 (2017). The Virginia Supreme Court has not defined the term "action" in this statute, and authority is mixed on whether courts should apply the "same transaction or occurrence" test or the "same evidence" test to determine if a claim is tolled by this provision. See Schur v. Zackrison, No. 1:15cv1013, 2015 WL 8484441, at *6 (E.D. Va. Dec. 8, 2015) (same transaction or occurrence); Dunston v. Huang, 709 F. Supp. 2d 414, 420 (E.D. Va. 2010) (same transaction or occurrence); Law v. PHC-Martinsville, Inc., 89 Va. Cir. 231 (2014) (same transaction or occurrence); Lawton-Gunter v. Meyer, 88 Va. Cir. 327 (2014) (same evidence); Allen v. Loudoun Cty. Sanitation Auth., 81 Va. Cir. 496 (2009) (same evidence). Carter argues for the same evidence test, Doc. 16 at 6–7, while Plaintiff argues for

the same transaction test, Doc. 20 at 12–13. Neither Party admits that this is a disputed question in the case law.

This Court finds <u>Dunston</u> persuasive. In <u>Dunston</u>, the Court found that a cause of action in Virginia law refers to a set of operative facts. 709 F. Supp. 2d at 418 (citing <u>Roller v. Basic Constr. Co.</u>, 238 Va. 321, 384 S.E.2d 323, 326 (1989)). It also found that "such action" in Va. Code Ann. § 8.01-229 refers to a "cause of action" because the Virginia "nonsuit statute refers to the nonsuited matter as a 'cause of action or claim.'" <u>Id.</u> (quoting Va. Code Ann. § 8.01-380). It further noted that Va. Sup. Ct. R. 1:6 and Va. Code. Ann. § 8.01-6.1 support its interpretation. <u>Id.</u> at 419–20. The passage of § 8.01-6.1 in 1999 changed the test for relating back pleading amendments to a transaction or occurrence test. <u>Id.</u> Similarly, the adoption of Rule 1:6 in 2006 overturned past authority that followed a same evidence test for claim preclusion. <u>Id.</u> On the basis of those provisions, the court in <u>Dunston</u> found that both the Virginia General Assembly and the Virginia Supreme Court would apply a transaction or occurrence test to the term "action" in the nonsuit tolling statute as well. <u>Id.</u> Thus, the Court in <u>Dunston</u> found that new claims that arose from the same transaction or occurrence as the nonsuited complaint were tolled by the nonsuit tolling provision. <u>Id.</u> at 421.

Carter offers no argument that this claim is untimely under the transaction or occurrence test. See Doc. 16 at 5–7; Doc. 21 at 3–4. Because the Court adopts the transaction or occurrence test, the Court **DENIES** the Partial Motion to Dismiss as to Count V.

## IV.    CONCLUSION

For the reasons set forth herein, the Court **GRANTS** Defendant McCabe's Motion to Dismiss, Doc. 5, as to Counts I and II; **GRANTS** said Motion **WITH LEAVE TO AMEND** as to Counts III and IV; and **DENIES** said Motion as to Count V. The Court **GRANTS** Defendant

Carter's Partial Motion to Dismiss, Doc. 15, as to Count II; and **DENIES** said Motion as to Count V.

The Clerk is **REQUESTED** to deliver a copy of this Order to all counsel of record.

It is so **ORDERED.**

/s/

Henry Coke Morgan, Jr.
Senior United States District Judge

HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, VA
August 30, 2017