IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

DAVID QUIGLEY,

    Plaintiff,

v.                      Civil Action No. 2:17cv70

ROBERT MCCABE, IMHOTEP
CARTER, AND JOHN DOE,

    Defendants.

## OPINION & ORDER

This matter is before the Court pursuant to two (2) Motions to Dismiss Plaintiff David Quigley's ("Plaintiff's") Amended Complaint, Doc. 28: Defendant Robert McCabe's ("McCabe's") Motion to Dismiss Counts I through IV, Doc. 29 ("McCabe's Motion"), and Defendant Imhotep Carter's ("Carter's") Motion to Dismiss Count II, Doc. 32 ("Carter's Motion"). For the reasons set forth in the Court's Opinion and Order entered August 30, 2017, Doc. 27, the Court **GRANTS** McCabe's Motion, Doc. 29, as to Counts I and II, and **GRANTS** Carter's Motion, Doc. 32. For the reasons set forth below, the Court **CONSTRUES** Counts III and IV as stating a single claim, and **DENIES** McCabe's Motion as to this claim.

### I. BACKGROUND

**A.**  **Factual Allegations**[1]

This action arises in response to the alleged negligent medical treatment of Plaintiff

---

[1] "In considering a motion to dismiss, [the Court] accept[s] as true all well-pleaded allegations and view[s] the complaint in the light most favorable to the plaintiff." Venkatraman v. REI Sys., Inc., 417 F.3d 418, 420 (4th Cir. 2005) (citing Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993)). The Court cautions, however, that the facts alleged by Plaintiff are recited here for the limited purpose of deciding the instant Motion to Dismiss. The recited facts are not factual findings upon which the parties may rely for any other issue in this proceeding.

1

during incarceration. Doc. 1, Ex. A ("Compl.") ¶¶ 6–9. In early August 2013, Plaintiff was incarcerated at the Norfolk City Jail. Id. ¶ 5. On or about August 7, 2013, he fell from a bunk bed and landed on his head and other parts of his body, falling unconscious and suffering severe injuries that included multiple broken bones. Id. ¶ 6. He was taken to the medical ward of the jail, where Defendant Carter and another doctor were responsible for his medical treatment. Id. ¶ 7. He "begged to be taken to the hospital," but they refused that request as well as any other "reasonable medical care." Id. Carter once dangled two aspirins in front of Quigley and then pulled them away without providing them to him. Id. Defendants provided "little to nothing in the way of medical services," resulting in "great pain of body and mind," subsequent medical expenses to treat those injuries, and permanent bodily injury. Id. ¶ 8. Upon his release on August 21, 2013, Plaintiff walked to Sentara Norfolk Hospital to receive care. Id. ¶ 9.

## B. Procedural History

Plaintiff filed his complaint in the Circuit Court for the City of Norfolk on December 22, 2016. Doc. 1. The Complaint names three Defendants: then Sheriff Robert McCabe, and facility doctors Imhotep Carter and John Doe. The Complaint asserted three claims against all Defendants: Count I for "Breaches of Virginia's Common Law and Statutory Duties," Count II for "Violations of the Virginia Constitution," and Count V for "Breaches of the 8th and 14th Amendments of the United States Constitution pursuant to 42 U.S.C. §§ 1983 and 1988." See Compl. at 1–4, 6–7. It asserted two additional claims against Defendant McCabe alone: Count III for "Failure to Train" and Count IV for "Defacto Policy of Denying Inmates Health Care." See id. at 5. In the original Complaint, Counts III and IV were alleged as Virginia law claims.

McCabe removed the case to this Court on January 31, 2017. Doc. 1. McCabe filed a Motion to Dismiss, Doc. 4, on February 1, 2017, and Carter filed a Partial Motion to Dismiss

Counts II and V, Doc. 15, on March 1, 2017. Plaintiff opposed both Motions. Docs. 10, 20. Defendants each replied in further support of their respective Motions. Docs. 12, 21.

On August 30, 2017, the Court entered an Opinion and Order GRANTING McCabe's Motion to Dismiss as to Counts I and II, GRANTING Carter's Partial Motion to Dismiss as to Count II, and DENYING both Motions as to Count V. See Doc. 27 at 1. Plaintiff was given LEAVE TO AMEND Counts III and IV, so as to state these as federal claims. Id.

Plaintiff filed an Amended Complaint on September 15, 2017. Doc. 28. Despite the Court's Order DISMISSING Count I as to McCabe and Count II as to McCabe and Carter, the Amended Complaint re-alleged Counts I and II against all Defendants. See id. ¶¶ 1–20. Per the Court's Order, the Amended Complaint re-stated Counts III and IV as federal claims, specifically as violations of the 8th and 14th Amendments of the U.S. Constitution, through 42 U.S.C. §§ 1983 and 1988. See id. ¶¶ 21–25. The Amended Complaint re-alleged Count V without change from the original Complaint. See id. ¶¶ 26–31.

On September 28, 2017, McCabe and Carter filed the instant Motions. Docs. 29, 32. Plaintiff did not respond to either Motion.

## II. LEGAL STANDARDS

### A. Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss tests the sufficiency of a complaint; it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Venkatraman,

417 F.3d at 420 ("In considering a motion to dismiss, we accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff.") (citing Mylan Labs., 7 F.3d at 1134). A complaint establishes facial plausibility "once the factual content of a complaint allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 256 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 678). Therefore, the complaint need not include "detailed factual allegations" as long as it pleads "sufficient facts to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of misconduct." Id. Although a court must accept as true all well-pleaded factual allegations, the same is not true for legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

In deciding the motion, a court may consider the facts alleged on the face of the complaint as well as "'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint.'" Moore v. Flagstar Bank, 6 F. Supp. 2d 496, 500 (E.D. Va. 1997) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (1990)). The court may look to documents attached to the complaint and those incorporated by reference without converting a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment. See Pueschel v. United States, 369 F.3d 345, 353 n.3 (4th Cir. 2004) (citations omitted).

C. § 1983

Section 1983 holds liable for damages any "person" who deprives someone of Constitutional rights while acting under color of state law. States and state officials who are sued in their official capacity are not "persons" subject to liability under § 1983. Will v.

4

Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). However, state officials sued in their personal capacity are "persons" subject to liability, even if sued for actions of an official nature. Hafer v. Melo, 502 U.S. 21, 31 (1991). In some circumstances, supervisors may be held liable for constitutional injuries inflicted by their subordinates. Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994) (citations omitted). Supervisory liability is intended to "pinpoint[] the persons in the decisionmaking chain whose deliberate indifference permitted the constitutional abuses to continue unchecked." Id. (quoting Slakan v. Porter, 737 F.2d 368, 376 (4th Cir. 1984)) (internal quotation marks omitted). The Fourth Circuit requires three elements to establish supervisory liability:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff;
> (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and
> (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Id. at 799 (citations omitted). Demonstrating "a pervasive and unreasonable risk" requires evidence that the conduct is widespread or at least occurred on several occasions. Id.

> Additionally, a plaintiff may allege a "policy or custom" violation in four ways:
>
> (1) through an express policy, such as a written ordinance or regulation;
> (2) through the decisions of a person with final policymaking authority;
> (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens;" or
> (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003) (quoting Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999)). "An official policy or custom . . . 'need not derive from municipal ordinances[, but] may also be found in formal or informal ad hoc policy choices or decisions of municipal officials authorized to make and implement municipal policy.'" Francis v. Woody, 2009 WL

5

1442015 (E.D. Va. May 22, 2009) (quoting Kirby v. Elizabeth City, N.C., 380 F.3d 777, 787 (4th Cir. 2004)).

### III. ANALYSIS

#### A. Counts I and II

Counts I and II of Plaintiff's Amended Complaint reiterate the same claims from Counts I and II of the original Complaint, and assert these claims against all Defendants. Compare Doc. 28 ¶¶ 1–20, with Compl. ¶¶ 1–20. In the Opinion and Order entered August 30, 2017, the Court DISMISSED Count I as to McCabe and DISMISSED Count II as to McCabe and Carter. See Doc. 27 at 9, 11, 17. Plaintiff has re-alleged both Counts against all Defendants without leave of the Court. Accordingly, and for the reasons stated in the Court's previous Opinion and Order, the Court **GRANTS** McCabe's Motion, Doc. 29, as to Counts I and II of the Amended Complaint, and **GRANTS** Carter's Motion, Doc. 32. The Court **DISMISSES** Counts I and II as to McCabe, and **DISMISSES** Count II as to Carter.

#### B. Count III

Count III of Plaintiff's Amended Complaint alleges former Sheriff McCabe's failure to train the medical staff at the Norfolk City Jail, in violation of the 8th and 14th Amendments and pursuant to 42 U.S.C. § 1983. Doc. 28 ¶¶ 21–23. Plaintiff states that "Sheriff McCabe had a duty to train the medical staff at the Norfolk City Jail so that an inmate with the plaintiff's conditions . . . would be taken to the hospital forthwith." Id. ¶ 21. Plaintiff alleges that McCabe breached this duty by failing to properly train the jail's medical staff, specifically, by "drastically cut[ting] costs and discourag[ing] the taking of inmates to the hospital." Id. ¶ 22. Plaintiff further alleges that his injuries were a direct and proximate result of McCabe's failure to train the jail's medical staff. Id. ¶ 23.

McCabe argues that he was not personally responsible for training the medical staff in the jail, and that even if he were, Plaintiff failed to allege "any prior incident that would have put former Sheriff McCabe on notice that the training was inadequate, or that plaintiff's alleged injury was 'bound to happen, sooner or later.'" Doc. 30 at 8 (quoting Carter, 164 F.3d at 218). McCabe asserts that "Plaintiff's only specific allegations relate to the purported inadequate medical care provided by Drs. Carter and Doe." Id. at 9.

Plaintiff did not respond to McCabe's instant Motion to Dismiss, Doc. 29. However, Plaintiff's response to McCabe's first Motion to Dismiss, Doc. 4, cites multiple cases in defense of Plaintiff's § 1983 claims. See Doc. 10 at 6, 15–17. First, Plaintiff notes that in Vinnedge v. Gibbs, 550 F.2d 926 (4th Cir. 1977), the Court found that "[i]t is the Sheriff who is immediately responsible for the prisoner's medical needs" under Sections 53-168 and 53-175 of the 1974 Virginia Code. Doc. 10 at 6 (quoting Vinnedge, 550 F.2d at 928). Those sections of the Virginia Code no longer exist, but Section 15.2-1609 of the current Code conveys the same responsibility: "The sheriff shall . . . . be charged with the custody, feeding[,] and care of all prisoners confined in the county or city jail." Thus, McCabe was the legal custodian of all prisoners confined in the Norfolk City Jail, and his argument that he was not responsible for the proper training of the jail's medical staff in caring for the prisoners is unpersuasive.

Next, Plaintiff points to a more recent case before this Court allowing a cause of action for failure to train medical staff to proceed against a sheriff. See Doc. 10 at 16–17 (citing Brown v. Mitchell, 308 F. Supp. 2d 682 (E.D. Va. 2004)). In Brown, an inmate displayed clear signs of a serious medical condition, yet prison guards and a doctor who witnessed these signs neglected to send the inmate to the hospital or otherwise offer him the treatment he needed. See Brown, 308 F. Supp. 2d at 686–688. The inmate died, and the administrator of his estate brought a

Section 1983 claim against the sheriff in charge of the jail, for failure to train. See id. at 701–707. The Court denied the sheriff's motion to dismiss this claim, finding that "the Complaint alleges [the sheriff] was deliberately indifferent by failing to institute a proper training program respecting the clear and recurrent Eighth Amendment right of inmates to have their serious medical needs attended to." Id. at 706. Essential to this holding, the Court distinguished two types of failure-to-train cases: those "involving a pattern of constitutional deprivations" and those "involving singular deprivations of more obvious rights." Id. (citing City of Canton, Ohio v. Harris, 489 U.S. 378, 396 (1989)).

McCabe faults Plaintiff for failing to allege any prior incident that would have put McCabe on notice of the alleged constitutional deprivation as to Plaintiff himself. However, as in Brown, the Complaint here concerns "a clear constitutional duty implicated in recurrent situations that a particular employee is certain to face," id. (quoting Harris, 489 U.S. at 396), the duty to attend to prisoners' serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 104 (1976) (finding that "deliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment). Because failure to train medical staff as to the proper handling of prisoners' serious medical needs violates a clearly established constitutional duty, Plaintiff is not required to allege a "pattern" of constitutional deprivations.

Plaintiff has alleged a serious medical condition. Plaintiff alleges that he "was rendered unconscious, suffered a brain injury, had blurred vision, suffered a broken collar bone, a broken wrist, and weakness in his legs," and had "begged to be taken to the hospital." Doc. 28 ¶¶ 6–7. He has further alleged that his serious medical condition was not properly treated—he was neither taken to the hospital nor given any pain medication, although he was allegedly taunted by Dr. Carter with two aspirin. Id. ¶ 7. Finally, Plaintiff has alleged that the failure of Drs. Carter

and Doe to provide him with reasonable medical care was a result of Sheriff McCabe's failure to train the medical staff at the jail so that an inmate with Plaintiff's conditions would be taken to the hospital. Id. ¶¶ 21–22. The Court **FINDS**, as this Court did in Brown, that Plaintiff has sufficiently alleged deliberate indifference by former Sheriff McCabe, through McCabe's "fail[ure] to institute a proper training program respecting the clear and recurrent Eighth Amendment right of inmates to have their serious medical needs attended to." Brown, 308 F. Supp. 2d at 706. Accordingly, the Court **DENIES** McCabe's Motion as to Count III.

C.  **Count IV**

In Count IV, Plaintiff briefly alleges that "Sheriff McCabe had a de facto policy which discouraged his staff to take inmates who were in the plaintiff's condition to the hospital." Doc. 28 ¶ 24. Plaintiff further alleges that the injuries detailed in the Complaint were a direct and proximate result of this policy, which Plaintiff claims is in violation of the 8th and 14th Amendments of the U.S. Constitution. Id. ¶ 25.

In his Motion, McCabe argues for dismissal of this claim, "[a]ssuming this claim is an official capacity claim." Doc. 30 at 9. The Court cannot accept this assumption, for the same reasons as stated in its August 30, 2017 Order. See Doc. 27 at 14. In that analysis, the Court observed that while it is true that Plaintiff alleges the constitutional deprivation that he suffered was a result of an official policy, the allegedly unconstitutional policy is not one that McCabe was obliged to follow by virtue of his office. See id. Rather, Plaintiff alleges that the source of that policy was former Sheriff McCabe himself. Thus, McCabe cannot avoid this claim by characterizing it as one targeting his official capacity, when Plaintiff has clearly alleged McCabe's personal involvement in establishing the policy. Cf. Francis v. Woody, 2009 WL 1442015, at * 6 (E.D. Va. May 22, 2009) ("Francis has alleged that Sheriff Woody 'personally'

and Doe to provide him with reasonable medical care was a result of Sheriff McCabe's failure to train the medical staff at the jail so that an inmate with Plaintiff's conditions would be taken to the hospital. Id. ¶¶ 21–22. The Court **FINDS**, as this Court did in Brown, that Plaintiff has sufficiently alleged deliberate indifference by former Sheriff McCabe, through McCabe's "fail[ure] to institute a proper training program respecting the clear and recurrent Eighth Amendment right of inmates to have their serious medical needs attended to." Brown, 308 F. Supp. 2d at 706. Accordingly, the Court **DENIES** McCabe's Motion as to Count III.

C.  **Count IV**

In Count IV, Plaintiff briefly alleges that "Sheriff McCabe had a de facto policy which discouraged his staff to take inmates who were in the plaintiff's condition to the hospital." Doc. 28 ¶ 24. Plaintiff further alleges that the injuries detailed in the Complaint were a direct and proximate result of this policy, which Plaintiff claims is in violation of the 8th and 14th Amendments of the U.S. Constitution. Id. ¶ 25.

In his Motion, McCabe argues for dismissal of this claim, "[a]ssuming this claim is an official capacity claim." Doc. 30 at 9. The Court cannot accept this assumption, for the same reasons as stated in its August 30, 2017 Order. See Doc. 27 at 14. In that analysis, the Court observed that while it is true that Plaintiff alleges the constitutional deprivation that he suffered was a result of an official policy, the allegedly unconstitutional policy is not one that McCabe was obliged to follow by virtue of his office. See id. Rather, Plaintiff alleges that the source of that policy was former Sheriff McCabe himself. Thus, McCabe cannot avoid this claim by characterizing it as one targeting his official capacity, when Plaintiff has clearly alleged McCabe's personal involvement in establishing the policy. Cf. Francis v. Woody, 2009 WL 1442015, at * 6 (E.D. Va. May 22, 2009) ("Francis has alleged that Sheriff Woody 'personally'

and Doe to provide him with reasonable medical care was a result of Sheriff McCabe's failure to train the medical staff at the jail so that an inmate with Plaintiff's conditions would be taken to the hospital. Id. ¶¶ 21–22. The Court **FINDS**, as this Court did in Brown, that Plaintiff has sufficiently alleged deliberate indifference by former Sheriff McCabe, through McCabe's "fail[ure] to institute a proper training program respecting the clear and recurrent Eighth Amendment right of inmates to have their serious medical needs attended to." Brown, 308 F. Supp. 2d at 706. Accordingly, the Court **DENIES** McCabe's Motion as to Count III.

C.  **Count IV**

In Count IV, Plaintiff briefly alleges that "Sheriff McCabe had a de facto policy which discouraged his staff to take inmates who were in the plaintiff's condition to the hospital." Doc. 28 ¶ 24. Plaintiff further alleges that the injuries detailed in the Complaint were a direct and proximate result of this policy, which Plaintiff claims is in violation of the 8th and 14th Amendments of the U.S. Constitution. Id. ¶ 25.

In his Motion, McCabe argues for dismissal of this claim, "[a]ssuming this claim is an official capacity claim." Doc. 30 at 9. The Court cannot accept this assumption, for the same reasons as stated in its August 30, 2017 Order. See Doc. 27 at 14. In that analysis, the Court observed that while it is true that Plaintiff alleges the constitutional deprivation that he suffered was a result of an official policy, the allegedly unconstitutional policy is not one that McCabe was obliged to follow by virtue of his office. See id. Rather, Plaintiff alleges that the source of that policy was former Sheriff McCabe himself. Thus, McCabe cannot avoid this claim by characterizing it as one targeting his official capacity, when Plaintiff has clearly alleged McCabe's personal involvement in establishing the policy. Cf. Francis v. Woody, 2009 WL 1442015, at * 6 (E.D. Va. May 22, 2009) ("Francis has alleged that Sheriff Woody 'personally'

acted with indifference to Francis's medical condition by failing to properly train and supervise his agents, and also by failing to create/implement policies at the Jail to ensure the provision of Francis's medical care. Therefore, because granting Francis leave to amend would permit him to state a claim against Sheriff Woody in his individual capacity under § 1983, leave to amend will be granted.").

Count IV does, however, strongly resemble Count III. Both Counts allege violations of the 8th and 14th Amendments, pursuant to 42 U.S.C. §§ 1983 and 1988. See Doc. 28 ¶¶ 23, 25. In Count III, Plaintiff states as part of the failure-to-train claim that McCabe "discouraged the taking of inmates to the hospital." Id. ¶ 22. The policy claim in Count IV similarly states that McCabe "discouraged his staff to take inmates who were in the plaintiff's condition to the hospital." Id. ¶ 24. Indeed, the Supreme Court has characterized failure-to-train claims like the Plaintiff's Count III as a subset of "official policy or custom" claims. See Harris, 489 U.S. at 388–89 ("Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983."). Accordingly, the Court **CONSTRUES** Counts III and IV as stating a single claim for McCabe's failure to train the jail's medical staff in the proper care of prisoners with serious medical conditions, specifically through the maintenance of an official policy or custom of discouraging said staff from sending inmates with such conditions to the hospital. For the reasons stated in Section III.B above, the Court **DENIES** McCabe's Motion as to this failure-to-train claim.

## IV. CONCLUSION

For the reasons set forth herein, the Court **GRANTS** McCabe's Motion, Doc. 29, as to Counts I and II, and **GRANTS** Carter's Motion, Doc. 32. The Court thus **DISMISSES** Counts I

and II as to McCabe, and **DISMISSES** Count II as to Carter.  The Court **DENIES** McCabe's Motion as to Counts III and IV, which the Court **CONSTRUES** as stating a single claim.

The Clerk is **REQUESTED** to deliver a copy of this Order to all counsel of record.

It is so **ORDERED.**

/s/
Henry Coke Morgan, Jr.
Senior United States District Judge

HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, VA
November 13, 2017